## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2020, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Flora
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Matter of A.K. and G.C. (Minor Children);

T.C. (Father)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 31, 2020

Court of Appeals Case No.
19A-JC-1981

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge
The Honorable Sherry Hartzler, Magistrate

Trial Court Cause Nos.
02D08-1901-JC-1
02D08-1901-JC-2

**Pyle, Judge.**

## Statement of the Case

T.C. ("Father") appeals the adjudication of his sons, A.K. ("A.K.") and G.C. ("G.C.") (collectively "the children") to be Children in Need of Services ("CHINS") based on a petition filed by the Department of Child Services ("DCS"). Father does not challenge the evidence supporting the CHINS adjudication. Rather, Father argues that the trial court erred in denying his motion to dismiss the CHINS case. However, our review of the record reveals that Father never asked the trial court, in either a written or an oral motion, to dismiss the case. Father has therefore waived appellate review of this issue. Further, waiver notwithstanding, we find no error in this case. Accordingly, we affirm the trial court's judgment.

We affirm.

## Issue

> Whether Father has waived appellate review of his argument that the trial court erred in denying his motion to dismiss the CHINS case when he never asked the trial court to do so.

## Facts

A.K. was born in August 2016, and G.C. was born in September 2017. On January 4, 2019, DCS filed a petition alleging that the children were CHINS. That same day, the trial court held an initial hearing, and Father was served with the CHINS petition in open court. At some point during the hearing, Father "left without court permission." (DCS' App. at 8). At the end of the

hearing, the trial court scheduled both a factfinding hearing, which the trial court referred to as an initial hearing, and a dispositional hearing for February 4, 2019.

[4] Father signed the summons that notified him about the February 4 hearing and advised him that his failure to appear might result in the waiver of his right to be heard. The summons also provided that the trial court might proceed with the factfinding and dispositional hearings in his absence. Father, however, did not attend the hearing. The trial court's order states that Father "[could not] be located." (DCS App. 28). Father's counsel appeared and represented Father's interests. After hearing evidence, the trial court adjudicated the children to be CHINS. Thereafter, the trial court immediately held a dispositional hearing. In its dispositional order, the trial court ordered the children to remain in foster care and Mother to comply with a parent participation plan. The trial court's order did not include a parent participation plan for Father.

[5] Father failed to attend an April 2019 CHINS hearing because he was incarcerated. Father's counsel appeared at the hearing. In May 2019, Father attended a CHINS hearing with counsel. Father admitted some of the allegations in the CHINS petition, and the trial court ordered Father to comply with a provisional parental participation plan. The trial court scheduled a July 1, 2019 factfinding hearing.

[6] DCS mailed Father notice of the factfinding hearing to the county jail. Further, a week before the hearing, DCS notified Father about the hearing during a

phone call. Father told the DCS case manager that he would attend the hearing. However, Father failed to appear in court on the day of the hearing. Father's counsel was in court to represent Father.

[7] At the beginning of the hearing, Father's counsel acknowledged that although Father was not at the hearing, Father had been given notice of the hearing and had been properly served. Father's counsel told the trial court that he did not believe that a factfinding hearing was "appropriate . . . based upon case law since there already was a finding of CHINS[.]" (Tr. Vol. 2 at 5). Father's counsel further explained as follows:

> The Court of Appeals states that we need to look at the statute regarding time limitations and . . . that's pretty strict on things however in this matter we've already had . . . an admission by the mom to allegations affecting . . . the adjudication of the Child in Need of Services for the children due to her conduct . . . there is a case out there . . . that states that the adjudication of CHINS goes towards the child and not to each of the parents so you don't have to have a Factfinding regarding both of those parents[.] [H]owever here I believe that . . . the . . . allegations in the Petition Alleging the Child to be a Child in Need of Services that the Court already found the adjudication on pertaining to mom so in the long roundabout ways I don't think it's proper for the time limits to do an actual Factfinding regarding . . . my client because we're past the 120 days however at the point it turns into a Dispositional hearing for him to find out what needs to be . . . given to either the children of for the parent for a Parent Participation Plan[.] [D]oes all that make sense kind of?

(Tr. Vol. 2 at 5-6).

The trial court responded to Father's explanation as follows, and the following colloquy ensued:

> Trial Court: Well whether I agree with it is one thing –
>
> Defense Counsel: I [] gotcha[,] I gotcha[,] and and we can you know –
>
> Trial Court: - - okay
>
> Defense Counsel: . . . ah so what I'm saying is I would object to any Factfinding occurring today however . . . I do believe that going forward under a Parent Participation Plan . . . would be proper . . . for Dispositional for my client and then I would have arguments . . . on the requirements of the Parent Participation Plan.
>
> Trial Court: Okay Department?
>
> DCS: Um Your Honor I guess I never understood the need to reestablish CHINS with the parent after . . . after it's already been found with respect to one child but from my perspective it's almost one and the same whether it's another CHINS Factfinding or whether to Factfinding for the Dispositional Hearing . . . and I – if the Court is so inclined I'm okay moving forward with the Factfinding for the Dispositional Hearing . . . especially given statutes and case law about the admission of evidence in Dispositional Hearings.

(Tr. Vol. 2 at 6-7).

Both Father's counsel and DCS agreed that because the children had already been adjudicated to be CHINS, the nature of the hearing was more factfinding for the purpose of disposition rather than factfinding for the purpose of adjudication. However, the trial court determined that it would "move forward

with the Factfinding [for the purpose of adjudication]." (Tr. Vol. 2 at 9). At no point did Father's counsel move to dismiss the case.

[10] After hearing evidence that Father was a frequent user of illegal drugs, including methamphetamine and that the children had been present during a domestic violence incident between Mother and Father, the trial court issued a July 2019 order adjudicating the children to be CHINS. The trial court held a dispositional hearing in late July and issued a CHINS dispositional decree in August 2019. Father now appeals.

## Decision

[11] Father does not challenge the evidence supporting the CHINS adjudication. Rather, his sole argument is that the trial court "erred in denying [his] motion to dismiss the CHINS petitions filed by the Indiana Department of Child Services when the factfinding hearing was not completed within 120 days." (Father's Br. at 4). Father has waived appellate review of this issue because he never asked the trial court, either in a written or oral motion, to dismiss the case. *See Indiana Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct App. 2015) (explaining that it "has long been the general rule in Indiana that an argument or issue presented for the first time on appeal is waived for purposes of appellate review").

[12] Waiver notwithstanding, we find no error. Father contends that his case should have been dismissed pursuant to INDIANA CODE § 31-34-11-1, which provides that a juvenile court should complete a factfinding hearing not more than sixty

days after the CHINS petition has been filed. The statute further allows a sixty-day extension of time to complete the factfinding hearing if all parties consent to the additional time. I.C. § 31-34-11-1.[1]

[13] However, we conclude that the parties in this case complied with this statute because the factfinding hearing was held well within the sixty-day statutory mandate. Specifically, the Indiana Supreme Court has explained that a CHINS determination establishes the status of a child alone. *In the Matter of N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). Because the CHINS determination regards that status of the child, a separate analysis as to each parent is not required at the CHINS determination stage. *Id*. "Indeed, to adjudicate culpability on the part of each individual parent in a CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child's circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court." *Id*. The resolution of a juvenile proceeding focuses on the best interest of the child, rather than guilt or innocence as in a criminal proceeding. *Id*.

[14] Here, DCS filed a CHINS petition in January 2019. The factfinding hearing, which Father did not attend, was held in February 2019, well within the sixty-day statutory mandate. Following the hearing, the trial court adjudicated the

---

[1] Father also cites *Matter of T.T.*, 110 N.E.3d 441, 443 (Ind. Ct. App. 2018), in support of his argument. Although we need not discuss *T.T.* in our resolution of this case, we point out that the Indiana Supreme Court recently abrogated *T.T.* in *Matter of M.S.*, 140 N.E.3d 279 (Ind. 2020).

children to be CHINS. Where the children had already been adjudicated to be CHINS, another factfinding hearing for the purpose of adjudication was not necessary. Rather, both Father's counsel and DCS were correct when they argued that the July 1, 2019 hearing was actually a dispositional hearing even though the trial court called it a factfinding hearing. After the July 1 hearing, the trial court held what it called a dispositional hearing and issued a dispositional order, which Father does not challenge. We find no error here.

[15] Affirmed.

May, J., and Crone, J., concur.